JOSEPH DiBLASI *v.* ZONING BOARD OF APPEALS OF
THE TOWN OF LITCHFIELD ET AL.
(14568)

PETERS, C. J., BORDEN, BERDON, NORCOTT and SANTANIELLO, Js.

Argued December 2, 1992—decision released March 2, 1993

*Thomas P. Byrne,* with whom was *Steven E. Byrne,* for the appellants (defendants).

*Franklin G. Pilicy,* for the appellee (plaintiff).

SANTANIELLO, J. This is an appeal from the judgment of the trial court sustaining the appeal[1] by the plaintiff, Joseph DiBlasi, from the decision of the named defendant zoning board of appeals of the town of Litchfield (board).[2] Upon the granting of the defendants' petition for certification,[3] they appealed to the Appel-

---

[1] General Statutes § 8-8 (b) provides in relevant part: "Any person aggrieved by any decision of a board may take an appeal to the superior court . . . ."

[2] In addition to the board, the chairman of the board and the town clerk were also named as defendants.

[3] General Statutes § 8-8 (o) provides in relevant part: "There shall be no right to further review except to the appellate court by certification for review . . . ."

late Court. We transferred the case to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm.

The procedural and factual background of the case is as follows. In 1970, the town of Litchfield adopted zoning regulations and a zoning map. From the time of the adoption of the zoning regulations, the use by the then owner, the Connecticut Light and Power Company (CL&P), of the plaintiff's property, located in a residential zone, became a legally existing nonconforming use.

The plaintiff's property contains a building consisting of approximately 6000 square feet that was constructed in 1957 by CL&P, and site improvements sufficient for CL&P to park equipment that was used off-site. CL&P used separate sections of the building for administrative offices, storage of parts and materials, and maintenance and repairs of equipment. In addition, the public frequented the building to pay utility bills and purchase small appliances.

In 1978, Katherine B. Anderson purchased the property to house the J.O. Anderson Company, a plumbing and heating supplies company. In 1986, the plaintiff purchased the property. Since 1986, the building has been occupied by the J.O. Anderson Company, as a tenant, and the White Birch Construction Company, the plaintiff's business.[4] Each company houses its offices in the building and runs its business from the site. The plaintiff garages most of his equipment off-site.

In September, 1990, the plaintiff submitted a proposed lease for 2000 square feet of office space, with an option for an additional 2000 square feet, to the state judicial department for an adult probation office. Some-

---

[4] Litchfield Partners also currently leases office space in the building from the plaintiff. The record does not reflect when Litchfield Partners became a lessee.

time thereafter, the plaintiff applied for, and received, a permit to update the building for code changes and to remodel it for his proposed tenant.

On October 11, 1990, the plaintiff spoke to the Litchfield land use administrator about the proposed lease, and was told that any change in use must be approved by the planning and zoning commission of Litchfield (commission).[5] On October 12, 1990, in a letter to the state department of public works leasing agent, the first selectman of Litchfield expressed her displeasure at learning secondhand of the adult probation office's proposed move to Litchfield. She requested the state to contact her before conducting any further negotiations to construct or lease a facility in Litchfield and noted that the permits required for occupancy of the plaintiff's building had not been obtained.

On October 15, 1990, the land use administrator again notified the plaintiff that any "change of use from construction office to an adult probation office" must be reviewed and approved by the commission. She instructed the plaintiff that "[i]n order to avoid any distress to the parties involved, the State, the Town or to you, please be sure to make application to the Litchfield Planning and Zoning Commission before furthering lease negotiations."[6] The minutes of the commission meeting held that same evening indicate that "[a]fter hearing that an Adult Probation Office in the White Birch Construction Building was proposed, the Commission requested that Mr. DiBlasi appear before them. After discussion, Mr. DiBlasi was told that he would have to submit an application for change of use."

In a letter dated October 19, 1990, the plaintiff explained that he was not changing the use, but rather

---

[5] The plaintiff has never conceded that there was a change in use. He did, however, comply with the demands of the local officials.

[6] Copies of this letter were sent to the first selectman and the department of public works director of leasing.

was continuing the nonconforming use begun by CL&P in 1957. On October 22, 1990, the land use administrator responded to the plaintiff's letter, informing him that the commission had been given the right by statute to review any proposed change in use. She informed the plaintiff that any delay in preparing the building for the state was attributable to his failure to file a change of use application in a timely manner. She noted that if he proceeded to negotiate a lease without commission approval, he would be doing so at his own risk.

The plaintiff followed these directives and filed an application for change of use on October 23, 1990. The application requested a change from "office use" to "office use." The plaintiff's application was considered by the commission at its November 5, 1990 meeting. The plaintiff explained that the proposed use was a continuation of the nonconforming use established in 1957 and, even if it were not a continuation, the proposed use was less intensive. In support of his application, the plaintiff presented to the commission a record of observations of activity at the Torrington adult probation office and a traffic report indicating a less intensive use of the property.

In opposition to the application, the commission had received a letter from the Litchfield director of health expressing his concern about the adequacy of the septic system, testimony from the land use administrator on the anticipated use by the adult probation office, and testimony from the town planner claiming that the application was incomplete because it failed to address traffic, safety and sewage concerns. The town planner stated that the proposed use was of a different character and compared the probation office to a medical office rather than a business office. Neighboring property owners encouraged the commission not to allow changes to any aspect of the nonconforming use, including design, layout, percentage of space devoted to each

type of use and occupation by owner rather than tenant. Finally the commission received a petition and letters protesting the application.[7]

The commission denied the application "for a change of use (Adult Probation Office) . . . because it creates a more intensive use and, at present, does not address the sewage disposal needs or the traffic and pedestrian safety improvements."[8]

The plaintiff appealed the commission's decision to the board. At the public hearing, on January 28, 1991, the board heard testimony from the plaintiff attesting to the financial hardship caused him by the commission's decision, and claiming that he had been told to file an application and the section of the regulations pursuant to which the application was to be filed. In addition, the plaintiff reiterated his claims before the commission that the proposed use was a continuation of the existing nonconforming use.

At its February 25, 1991 meeting, the board characterized the plaintiff's application as a change of use that had been properly denied by the commission. One member of the board stated: "I think that when they (Plan-

---

[7] The petition stated: "WE, THE UNDERSIGNED, ARE EXTREMELY CONCERNED ABOUT THE PROPOSED MOVE OF THE ADULT PROBATION OFFICE TO THE WHITE BIRCH CONSTRUCTION COMPANY BUILDING ON ROUTE 202 WHICH IS IN OUR RESIDENTIAL (R-80) NEIGHBORHOOD. ALSO THE PROXIMITY OF THIS PROPOSED OFFICE TO THE HIGH SCHOOL AND MIDDLE SCHOOL SHOULD BE A MAJOR CONCERN TO EVERYONE."

[8] On November 6, 1990, the land use administrator notified the state that the commission had denied the plaintiff's application. This letter was followed, on November 7, 1990, by a letter from the town attorney again noting the denial and stating the town's intent to seek judicial relief if the state proceeded with its plans to lease the building. On November 8, 1990, the land use administrator notified the plaintiff that he was remodeling the building in violation of the zoning regulations and that he would face fines or fines and imprisonment if he continued the work. Finally, on November 13, 1990, the commission informed the plaintiff that his application had been denied.

ning and Zoning) based their decision, they based it on proper information. I think they had enough information and I think something like the health record is important to their decision. I think there is definitely a change of use in the property." He also noted that although every company has an office, the building in which that office is located is not necessarily an office building. The board denied the appeal "based on the fact that we see nothing wrong with what Planning and Zoning did; they were within their scope, within the realm of their responsibilities and . . . they did what they felt was best for the community."

On March 19, 1991, the plaintiff appealed the decision of the board to the Superior Court. The trial court sustained the plaintiff's appeal,[9] holding that the commission had "abused its discretion and acted in an arbitrary and illegal manner in denying the plaintiff's application to continue to use his property . . . for office use . . . ."

The defendants claim that the trial court improperly substituted its judgment for that of the board. The trial court concluded that the record did not support the board's decision that the plaintiff's proposed lease to the adult probation office constituted an impermissible change in use. The court found that the board had focused its attention on factors that were not relevant to a determination of whether the plaintiff's proposed use of the property was a change in use. It did not find, as the defendants claim, that although the board's decision was supported by the record, the court preferred a different result.

On appeal, the trial court may not retry the facts. The court will review the record before the board to determine "whether the board's decision was a reason-

---

[9] The trial court found that the plaintiff, as owner of the property, was aggrieved. The defendants have not challenged this determination on appeal.

ably exercised honest judgment supported by the record." *Oakwood Development Corporation* v. *Zoning Board of Appeals,* 20 Conn. App. 458, 461, 567 A.2d 1260, cert. denied, 215 Conn. 808, 576 A.2d 588 (1990); see *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 654, 427 A.2d 1346 (1980) (the court " 'reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons' ").

The issue before both the commission and the board was whether the lease of office space constituted a change in nonconforming use. The Litchfield zoning regulations provide that "[a]ny building or use of land or building legally existing at the time of the adoption of these regulations or of any amendment thereof, which does not conform to the provisions of these regulations for the use and area requirements of the district in which it is located, shall be designated a nonconforming use." Litchfield Zoning Regulations, art. VI, § 1.1. When the town adopted zoning regulations in 1970, the property involved became a nonconforming use and remained so at the time of the plaintiff's application to the commission.

The zoning regulations further provide that "[a] nonconforming use may be continued, changed to a conforming use, or changed to a use which is less intensive in character than the present nonconforming use. . . ." Id., art. VI, § 1.5. The plaintiff contends that the proposed lease of office space is merely a continuation of the nonconforming use first established in 1957 by CL&P. The defendants maintain that the proposed lease represents a change in use and, therefore, that the right to make such use of the plaintiff's property was correctly denied by the board as being more intensive than the current use of the property.

To determine whether the proposed use represents a change in use, we first consider the treatment of office use in the zoning regulations. A professional office is one that provides services of a professional as distinguished from a business nature. Id., art. II, § 25. This distinction is applied only in describing the type of office that can be maintained in a residential zone. Id., art. V, § 4.1. In describing business zones the regulations make no distinction between a professional office and a business office. Id., art. V, §§ 9.2 (c), 10.1 (c), 11.1 (c).

General Statutes § 8-2 restricts the ability of a town to eliminate a nonconforming use through its zoning regulations. "Such regulations shall not prohibit the continuation of any nonconforming use . . . existing at the time of adoption of such regulations." General Statutes § 8-2 (a); see *Helbig* v. *Zoning Commission,* 185 Conn. 294, 306, 440 A.2d 940 (1981); *Gilbertie* v. *Zoning Board of Appeals,* 23 Conn. App. 444, 446, 581 A.2d 746 (1990). Therefore, if office use was an existing use of the plaintiff's property in 1957, a continuation of that use would be protected.

"[W]e have stated, in defining the words 'existing use,' that we mean a utilization of the property so that it may be known in the neighborhood as being employed for a given purpose; that neither the extent nor the quantity nor the quality of the use which may be permitted to continue is prescribed by those words; and that it is only required that the use must have existed. The court is not generally required to speculate as to the number of acts or business transactions necessary to constitute an existing use." *Melody* v. *Zoning Board of Appeals,* 158 Conn. 516, 520–21, 264 A.2d 572 (1969).

The evidence before the board and the commission did not support the defendants' claim that office use was not an existing nonconforming use of the property. The plaintiff described the use of the property by CL&P

as including administrative offices and an area where the public could pay bills and purchase small appliances as well as areas devoted to dispatching repairers and repairing equipment. The record discloses, therefore, that CL&P had used this building to conduct its business in the Litchfield area. In her October 15, 1990 letter, the land use administrator objected to the "change of use from construction office to an adult probation office . . . ." This letter itself acknowledges, therefore, that the property had been used for offices.

The testimony before the commission on which it relied to find a change of use noted the differences in usage of a business office as compared to a medical office. These differences relate to the hours of operation and number of visitors to the building. The probative value of this evidence is undermined by the fact that a business office and a medical office are both offices and are not differentiated in the zoning regulations. Therefore, the evidence before the board and the commission indicates that the building had been and continues to be known in the neighborhood as containing offices. The trial court properly held that the evidence before the board did not support the defendants' claim of a change in use.

In addition, the trial court concluded that both the commission and the land use administrator had misidentified the plaintiff's proposed lease as a proposal to extend or expand a present nonconforming use when they required the plaintiff to file an application for change of use or face legal action. The commission, and subsequently the board, inappropriately used this application as evidence that the plaintiff was seeking a change in the nonconforming use of his property.

The defendants also claim that there was equally sufficient testimony to support the board's decision upholding the commission's determination that the application

was for a change of use. They point to the testimony of the land use administrator describing the proposed hours, number of staff members and number of anticipated visits to the adult probation office; the testimony of neighboring property owners who interpreted the language of the statute to mean that nothing about the use at the time of the adoption of zoning regulations could be changed; and the testimony of the town planner discussing the difference in character of a business office and a medical office.

None of this testimony provides support for the board's decision. First, the testimony of the land use administrator focuses on the intensity of the use of the property. While a change in intensity may be a valid criterion for determining whether to allow a change in use, it is not an acceptable criterion for determining whether a proposed use is a change in use or a continuation of an existing use. " 'We have previously held that a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion of the original use.' " *Zachs* v. *Zoning Board of Appeals,* 218 Conn. 324, 331, 589 A.2d 351 (1991), quoting *Helicopter Associates, Inc.* v. *Stamford,* 201 Conn. 700, 716, 519 A.2d 49 (1986). Second, the use at the time of the adoption of zoning regulations is not frozen. The amount of business may be increased; see *Zachs* v. *Zoning Board of Appeals,* supra; and the nonconforming use may continue despite changes in ownership or tenancy; see 1 R. Anderson, American Law of Zoning (3d Ed. 1986) § 6.40. Third, the town planner's discussion of the difference in character between a business office and a medical office is inappropriate because the zoning regulations do not differentiate between these types of offices under these circumstances.

The judgment is affirmed.

In this opinion the other justices concurred.