[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is an appeal from the decision of the zoning board of appeals of the city of Hartford upholding the ruling of the zoning administrator, who declared that the plaintiffs are in violation of the zoning regulations of the city of Hartford.
The record discloses the following facts. On October 14, 1993, Damach, Inc. ("Damach") leased premises at 50 Union Place, Hartford, for a term of five years "solely for the purpose of a bar, restaurant, nightclub, cabaret or like use with dancing and entertainment and for no other purpose." (Return of Record (ROR), Exhibit N, Lease § 1.01(n).) David Squillante is a principal shareholder in Damach. Despite the specific language in the lease, the plaintiffs claim that there was an understanding between the lessor and the lessee that the premises would be used for adult entertainment.
On October 23, 1993, Abraham Ford, the city's zoning administrator, "signed off" on the plaintiffs' application for a liquor permit filed on November 15, 1993 with the state department of liquor control. Ford certified that "at this location, said . . . city does not prohibit the sale of liquor under the permit here applied for." (ROR, Exhibit D). The permit application did not state any details about the use of the CT Page 8569 property. On October 28, 1993, Ford issued a certificate of occupancy for the property, approving the premises for occupancy and listing "Cafe Liquor" under "use and description." (ROR, Exhibit A.) In the "Public Notice and Certificate — Application for Liquor Permit," dated November 15, 1993, and filed with the department of liquor control, the plaintiffs stated that that entertainment would consist of "exotic dancers, T.V.'s, D.J.'s, comedians, live bands." (ROR, Exhibit E.) The record does not disclose that the city's zoning authorities knew of the proposed adult entertainment in October, 1993, when Ford signed the liquor permit certification and certificate of occupancy. At that time, adult entertainment was a permitted use in a B-1 zone. The plaintiffs' property is located in a B-1 zone.
On April 7, 1994, the department of liquor control, following a hearing on the application, issued a memorandum of decision denying the plaintiffs' application. The reason set forth in the department's decision was that the application would be detrimental to the public interest. (See ROR, Exhibit F.)
The plaintiffs appealed the department's decision to the Superior Court. On October 12, 1994, the court sustained the appeal and remanded the case to the department with an order to grant the application upon compliance with all provisions of the applicable statutes and regulations. The department appealed this decision to the Appellate Court. The Appellate Court affirmed the decision of the trial court. See Crescimanni v. Dept. of LiquorControl, 41 Conn. App. 83, 674 A.2d 851 (1996).
On May 9, 1994, the Court of Common Council of the city of Hartford amended its municipal code to permit adult entertainment establishments only in I-1, I-2, and C-1 zones, thereby excluding adult entertainment from B-1 zones. The amendments also provided for definitions in § 35-2 of the city's municipal code. (See ROR, Exhibit H.) "Adult establishment" was defined to mean "adult bookstore, adult cabaret, adult mini-motion picture-theater or adult motion picture theater, or any combination thereof." "Adult cabaret" was defined to mean "a nightclub, bar, restaurant or similar establishment that regularly features live performances that are characterized by the exposure of specific anatomical areas or by specified sexual activities, or films, motion pictures, video cassettes, slides or other photographic reproductions in which a substantial portion of the total presentation time is devoted to the showing of material that is characterized by any emphasis upon the depiction or description CT Page 8570 of specified activities or anatomical areas." (ROR, Exhibit H.)
On August 29, 1996, a notice of violation was issued by the zoning administrator of the city of Hartford stating that the premises in question were in violation of §§ 35-854 and 35-921 of the city's municipal code because adult entertainment was being provided in a B-1 zone at 50 Union Place. The plaintiffs appealed the administrator's decision to the zoning board of appeals of the city of Hartford, which upheld the zoning administrator's decision. This appeal followed.
The standard for review of the decision of the zoning board of appeals is "`to decide whether the board correctly interpreted the regulation and applied it with reasonable discretion to the facts. Pascale v. Board of Zoning Appeals, 150 Conn. 113, 117,186 A.2d 377 (1962). Caserta v. Zoning Board of Appeals,28 Conn. App. 256, 258, 610 A.2d 713 (1992), aff'd in part, 226 Conn. 80,626 A.2d 744 (1993) quoting Thorne v. Zoning Board of Appeals,156 Conn. 619, 620, 238 A.2d 400 (1968).
As a preliminary matter, it is necessary for us to first consider the defendant's motion to dismiss this appeal for lack of subject matter jurisdiction based upon an alleged lack of aggrievement. Pleading and proof of aggrievement are prerequisites to the court's jurisdiction over the subject matter of a plaintiff's appeal. Jolly v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). The party claiming aggrievement must show "`a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must establish that this specific, personal and legal interest has been specially and injuriously affected by the decision.'"Primerica v. Planning Zoning Commission, 211 Conn. 85, 92-93,558 A.2d 646 (1989), quoting Hall v. Planning ZoningCommission, 181 Conn. 442, 444, 435 A.2d 975 (1980). "[T]he extent to which a party with an interest in the property other than that of an owner is aggrieved depends on the circumstances of each case, because the concept of standing is a practical one designed to ensure that only those parties with substantial and legitimate interest can appeal an order." Primerica v. Planning Zoning Commission, supra, 93.
The plaintiffs have been ordered by the zoning authority to CT Page 8571 stop an activity that they believe in good faith is a permissible use of the premises under the relevant statutes and regulations. Whether the landlord permits them to use the premises for adult entertainment under their lease is an issue between the plaintiffs and their landlord, and is separate from the issue of whether the plaintiffs' actions violated the municipal code. Since we find that the order of the zoning authority affects the plaintiffs' use of their property, we conclude that the plaintiffs are aggrieved parties, and therefore the motion to dismiss is denied.
The defendant also raised the issue of mootness in its brief. The defendant claims that the plaintiffs' appeal is moot because the city has obtained a cease and desist order against the plaintiffs' landlord, the owner of 50 Union Place, prohibiting adult entertainment on the premises, which the landlord has not appealed. The defendant claims that because the landlord did not appeal the cease and desist order, the plaintiffs cannot obtain any practical benefit or relief if their appeal is sustained because the cease and desist order remains in effect as to the owner of the premises.
Mootness implicates the court's subject matter jurisdiction.Gagnon v. Planning Zoning Commission, 222 Conn. 294, 297,608 A.2d 1181 (1992). Here, the plaintiffs are claiming that their use of the property for adult entertainment is a nonconforming use. "`Where a nonconformity exists, it is a vested right which adheres to the land itself.'" Carbone v. Vigliotti,222 Conn. 216, 230, 610 A.2d 565 (1992), quoting Petruzzi v. Zoning Boardof Appeals, 176 Conn. 479, 483, 408 A.2d 243 (1979). A nonconforming use may continue despite changes in occupancy or tenancy. DiBlasi v. Zoning Board of Appeals, 224 Conn. 823, 833,624 A.2d 372 (1993). If the plaintiffs' appeal is sustained because the plaintiffs' use of the property is a valid nonconforming use, then the plaintiffs potentially would be able to continue that use, regardless of whether the owner also appealed the cease and desist order. The plaintiffs' appeal is therefore not moot.
The key issue in this case is whether the plaintiffs acquired a vested right to use the premises for adult entertainment before the city changed the municipal code to exclude adult entertainment in a B-1 zone. The answer to this issue centers around the question of whether there was an existing use of adult entertainment on the premises at the time the regulations went CT Page 8572 into effect and whether General Statutes § 8-2h precludes the city from prohibiting adult entertainment on the premises because the plaintiffs' application for a liquor permit predates the amendment to the municipal code.
The plaintiffs claim that General Statutes § 8-2h
requires that they be allowed to provide adult entertainment on the premises because adult entertainment was allowed in that zone as of the time they received a certificate of occupancy and filed the application for liquor permit. General Statutes § 8-2h is captioned "Zoning applications filed prior to change in zoning regulations not required to comply with change. Applications for building permit or certificate of occupancy filed prior to adoption of zoning regulations not required to comply with regulations." General Statutes § 8-2h provides, in pertinent part: "(a) An application filed with an . . . agency exercising zoning authority of a . . . city . . . which is in conformance with the applicable zoning regulations as of the time of filing shall not be required to comply with, nor shall it be disapproved for the reason that it does not comply with any change in the zoning regulations . . . taking effect after the filing of such application. (b) An application for a . . . certificate of occupancy filed with the building official of a city . . . prior to the adoption of zoning regulations by such city . . . in accordance with this chapter shall not be required to comply with, nor shall it be disapproved for the reason that it does not comply with, such zoning regulations."
By its very words, General Statutes § 8-2h is directed at local zoning authorities, and not to applications filed with state agencies. The provisions of General Statutes § 8-2h
"are directed at situations where an application is filed with a zoning authority that seeks to make use of land in a manner permitted under regulations existing at the time the application is filed. In those circumstances, 8-2h requires the zoning authority, acting in its administrative capacity, to process the application in accordance with the regulations in effect at the time the application is filed." Homart Development Co. v.Planning Zoning Commission, 26 Conn. App. 212, 218, 600 A.2d 13
(1991). In the present action the plaintiffs had no application pending before the city's zoning authority as of May, 1994, when the municipal code was changed to prohibit adult entertainment in a B-1 zone. The city had already issued a certificate of occupancy for the premises for use as a cafe serving liquor, not as a cafe providing adult entertainment. The city certified CT Page 8573 zoning compliance on the plaintiffs' liquor permit application only as to use for the sale of liquor.
General Statutes § 8-2h does not "grandfather," as of the date of the filing of certificate of occupancy or certification of zoning compliance, any and all conceivable future uses that were permitted as of the filing date, but are subsequently prohibited. Section 8-2h does not apply to "grandfather" a use that the plaintiffs were allowed to conduct on the property prior to the change in the municipal code, but chose not to conduct. The plaintiffs' appeal cannot be sustained on this ground.
The plaintiffs also argue that their proposed use of the property was a nonconforming use because the proposed use was known by the people in the neighborhood, and that the plaintiffs spent substantial sums of money in preparation for the use. Prior to May 9, 1994, there was no prohibition on adult entertainment in a B-1 zone. Adult entertainment became a nonconforming use upon adoption of this change in the zoning regulations. SeeGuilford v. Landon, 146 Conn. 178, 182, 148 A.2d 551 (1959). "A non-conforming use is merely an existing use the continuance of which is authorized by the zoning regulations." (Internal quotation marks omitted.) Francini v. Zoning Board of FranciniAppeals, 228 Conn. 785, 789, 639 A.2d 519 (1994), quoting Melodyv. Zoning Board of Appeals, 158 Conn. 516, 519, 264 A.2d 572
(1969). "It is well established that `[t]o be a nonconforming use the use must be actual. It is not enough that it be a contemplated use [or] that the property was bought for a particular use. The property must be so utilized as to be irrevocably committed to that use.'" Francini v. Zoning Board ofAppeals, supra, quoting Lebanon v. Woods, 153 Conn. 182, 197,215 A.2d 112 (1965). The plaintiff bears the burden of proving the existence of the nonconforming use. Francini v. Zoning Board ofAppeals, supra.
The only evidence cited by the plaintiffs in support of the existence of adult entertainment at 50 Union Place prior to May 9, 1994, is that the plaintiffs applied for a liquor permit in 1993 and that the notice for the liquor permit dated November 15, 1993, recited that the premises would have entertainment such as exotic dancers. The plaintiffs also claim that they had an understanding with the lessor that the premises would be used for adult entertainment. The terms of the lease in the record, however, are contrary to this understanding. (See ROR, Exhibit N.) CT Page 8574
Regardless of whether the plaintiffs had an understanding with the landlord, the simple fact is that the record reflects that no adult entertainment was actually being provided on the premises prior to the time the municipal code was amended on May 9, 1994, to exclude adult entertainment from a B-1 zone.
There is no evidence in the record that in October, 1993, when the zoning administrator issued the certificate of occupancy and certified zoning compliance on the liquor permit application, the plaintiffs were contemplating any uses other than "cafe liquor." Once they made their intentions known, in November, 1993, the record shows no actions by the plaintiffs to actually provide the contemplated adult entertainment prior to the enactment of the amendments to the municipal code in May, 1994. Prior to that date, the plaintiffs could have used the property for adult entertainment but the record shows that they did not. Apparently, the plaintiffs' intent was to wait until they received a liquor permit, but there is nothing in the record, nor have the plaintiffs cited any applicable law, that that shows that the plaintiffs were obligated to obtain the liquor permit prior to providing such entertainment. As previously noted, a nonconforming use must be actual, not contemplated. See Franciniv. Zoning Board of Appeals, supra, 228 Conn. 789. The fact that members of the public raised objections to the intended use does not make it an actual use. There is nothing in the record that shows that the plaintiffs actually provided adult entertainment on the premises prior to the change in the zoning regulations, or that the plaintiffs needed a liquor permit in order to provide such entertainment.
A review of the record and the facts contained therein do not support the plaintiffs' claim that the decision of the defendant board was unreasonable, arbitrary or illegal. New London v.Zoning Board of Appeals, 29 Conn. App. 402, 405, 615 A.2d 1054
(1992). The burden was on the plaintiffs to show that the board acted improperly. Id. This they failed to do.
The plaintiffs' appeal is therefore dismissed.
Arnold W. Aronson Judge Trial Referee CT Page 8575