[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Malcolm E. C. Devine, Jr., appeals from three decisions of the defendant Town of Coventry Zoning Board of Appeals (ZBA) each upholding a cease and desist order issued by the Town of Coventry's zoning enforcement officer to the plaintiff.
The ZBA's acted pursuant to General Statutes § 8-6. The plaintiff appeals pursuant to General Statutes § 8-8.
This Court dismisses the appeal, finding (1) the Court does not have subject matter jurisdiction to review the ZBA's March 19, 1996 decisions (2) the plaintiff's due process rights were not violated by the manner in which the hearings were conducted, and (3) the ZBA's April 16, 1996 decision upholding the zoning enforcement officer's cease and desist order is supported by the record.
PROCEDURAL HISTORY
The ZBA issued two decisions on March 19, 1996, mailed the decisions to the plaintiff on March 28, 1996 and published the decisions on March 29, 1996. (Return of Record [ROR], Item ## 37, 44.) The ZBA issued a third decision on April 16, 1996, mailed the decision to the plaintiff on April 24, 1996 and published the decision on April 26, 1996. (ROR, Item ## 40, 45.) The plaintiff began the appeal on May 9, 1996, by service of process on the ZBA's chairperson and the clerk of the Town of Coventry. (Sheriff's Return.) The ZBA filed an answer with two special defenses and the return of record on August 19, 1996. An amended complaint was filed on September 26, 1996. Both parties filed briefs. A hearing was held before this Court on June 27, 1997.[1] A supplemental return of record was filed on July 11, 1997.
FACTS
The plaintiff operates his business Devine's Snow Water Sportshop\Coventry Classics at 1465 Main Street, in Coventry, Connecticut. [ROR, Item # 15.] Prior to the plaintiff taking occupancy of the property, the property was used by John MacQuown. (ROR, Item # 28.) MacQuown used the property to operate Turret Lathe Services, a business specializing in rebuilding turret lathes. Specifically, in his use of the property, MacQuown dismantled, steam cleaned, stripped and ground turret lathe machines, which he then rented or sold. (ROR, Item ## 28, 37, 39.) In 1957, MacQuown was granted a variance by the ZBA to expand his CT Page 163 building from 1, 000 to 4, 000 square feet. (ROR, Item # 28.)
In 1976, the plaintiff moved his business to the property. (ROR, Item # 35.) The plaintiff's business includes servicing and restoring British motor cars, boats marine engines, all-terrain vehicles and snowmobiles. (ROR, Item 42, Transcript [Tr.] of 2/20/96 Hearing, p. 5; Tr. of 3/19/96 Hearing, p. 25; Plaintiff's Brief, p. 1.)
On December 27, 1995, the zoning enforcement officer issued to the plaintiff an order to cease four violations of the Town of Coventry's Zoning Regulations ("regulations"): (1.) Section 18.3 installing a sign; (2.) Section 2.2 — retail selling of goods; (3.) Section 7.1.10 — operating a junk yard; (4.) Section 14.2.1 extending or enlarging a nonconforming use. (ROR, Item # 1.) The plaintiff appealed the cease and desist orders to the ZBA on January 25, 1996. (ROR, Item # 2.)
PROCEEDINGS BEFORE THE DEFENDANT
The ZBA began a public hearing on the appeal on February 20, 1996. (ROR, Item # 30.) At the hearing, the plaintiff made a statement to the ZBA about his business, the prior use of the property, the effect of several statutes and regulations, and the entanglements he has had with various municipal and state officials regarding licenses. (ROR, Item # 42, Tr. of 2/20/96 Hearing, pp. 3-5.) Several residents testified about the sign blocking their vision and the unsightly appearance of various automobiles sitting on the property. (ROR, Item # 42, Tr. of 2/20/96 Hearing, pp. 10-11.) Various ZBA members spoke about and asked questions regarding the plaintiff's use of the property. (ROR, Item # 42, Tr. of 2/20/96 Hearing, pp. 9-19.) The ZBA continued the hearing for one month. (ROR, Item # 42, Tr. of 2/20/96 Hearing, p. 19.)
On March 19, 1996, the public hearing continued. (ROR, Item 42, Tr. of 3/19/96 Hearing, pp. 19-35.) Two letters from residents were read into the record. (ROR, Item # 42, Tr. of 3/19/96 Hearing, p. 20.) The plaintiff read a written statement responding to the criticism of the appearance of his property given at the prior hearing and stated that he was attempting to make improvements. (ROR, Item # 42, Tr. of 3/19/96 Hearing, pp. 20-22.) There was a discussion regarding whether the public hearing had been closed at the prior meeting. (ROR, Item # 42, Tr. of 3/19/96 Hearing, pp. 27-28.) The public hearing was then closed. (ROR, Item # 42, Tr. of 3/19/96 Hearing, p. 28.) CT Page 164
The ZBA voted to uphold the decision of the zoning enforcement officer regarding the violation of Section 7.1.10 operating a junk yard by a unanimous vote. (ROR, Item # 42, Tr. of 3/19/96 Hearing, p. 29.) The ZBA decided not to vote on violation of Section 18.3 regarding prohibited signs, because the plaintiff had removed the sign.[2] (ROR, Item # 42, Tr. of 3/19/96 Hearing, pp. 29-30.) The ZBA voted on a motion to uphold the zoning enforcement officer's cease and desist order of Section 2.2, retail selling of goods. Although the vote was 2-3 in favor of upholding the order, (ROR, Item # 42, Tr. of 3/19/96 Hearing, p. 33), the cease and desist order remained in place. "The concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order . . . of the official charged with the enforcement of the zoning regulations. . . ." General Statutes § 8-7. Finally, the ZBA voted to continue the hearing on the nonconforming use issue until the next meeting. (ROR, Item # 42, Tr. of 3/19/96 Hearing, p. 34.)
The ZBA met again on April 16, 1996 at which time the members had a discussion about the plaintiff's business. (ROR, Item # 42, Tr. of 4/16/96 Hearing, pp. 43.) The ZBA then voted 2-3 to uphold the zoning enforcement officer's cease and desist order of violation 14.2.1, a nonconforming use. (ROR, Item # 42, Tr. of 4/16/96 Hearing, p. 43.) Thus, the order remained in place. General Statutes § 8-7. (See discussion, supra, regarding number of votes needed to reverse an order by a zoning enforcement officer).
JURISDICTION
A. Aggrievement
Pleading and proof of aggrievement are prerequisites to a trial Court's jurisdiction over an administrative appeal. Jolly,Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996); General Statutes § 8-8 (b). In the present case, the plaintiff is the occupant of the property that is the subject of the ZBA's decision and is the person against whom the cease and desist order was issued. (ROR, Item # 1.) In addition, the plaintiff properly pleaded aggrievement. (Complaint, ¶ 9). The court finds the plaintiff is aggrieved.
B. Timeliness
The zoning enforcement officer cited the plaintiff for four CT Page 165 violations. The ZBA discussed and voted on each one separately. At its March 19, 1996 meeting, the ZBA voted to uphold the order for violation of Section 7.1.10 — maintaining a junkyard and voted to uphold the order for violation of Section 2.2 — retail sales. These two decisions were published in Willington's The Chronicle on March 29, 1996. (ROR, Item # 44.) At its April 16, 1996 meeting, the ZBA voted to uphold the order for violation of Section 14.2.1, an extension or enlargement of a nonconforming use. This decision was published in The Chronicle on April 26, 1996. (ROR, Item # 145.)
The ZBA raised as its First Special Defense that the appeal begins when the defendant is served, and the defendant must be served within fifteen days of publication of its decision. Since the defendant was served on May 9, 1996, the Court lacks subject matter jurisdiction as to the ZBA's decisions issued on March 16, 1996. The plaintiff failed to address the issue of subject matter jurisdiction in his amended complaint and in his brief. At oral argument, the plaintiff claimed that the ZBA's April 16, 1996 decision was the final decision for all the cited violations. The April 16, 1996 decision was published on April 26, 1996, thirteen days before the appeal was taken.
[O]nce the question of lack of jurisdiction of a Court is raised, it must be disposed of no matter in what form it is presented . . . and the Court must fully resolve it before proceeding further with the case." (Citations omitted; internal quotation marks omitted.) Castro v. Viera, 207 Conn. 420, 429,541 A.2d 1216 (1988). The right to appeal from the decision of an administrative agency exists only under statutory authority. This right may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Fee v. Carothers, 23 Conn. App. 435, 437,580 A.2d 244 (1990). "Provisions in the statutes as to time requirements are mandatory and, if not complied with, render the appeal subject to abatement." Valley Cable Vision. Inc. v. Public UtilitiesCommission, 175 Conn. 30, 32, 392 A.2d 485 (1978). An appeal from a zoning commission shall be commenced by service of process within fifteen days from the date that notice of the decision was published. General Statutes § 8-8 (b). "If the appeal period has expired when an appeal is filed the trial court lacks jurisdiction over the appeal." Cardoza v. Zoning Commission, 211 Conn. 78, 82,557 A.2d 545 (1939).
The Court notes that the decisions published on March 29, 1996 CT Page 166 clearly state that the ZBA upheld the zoning enforcement officer's cease and desist orders for violations of Sections 7.1.10 and 2.2 and that the hearing was continued to the April 16, 1996 meeting for further consideration of the cease and desist order issued for violation of Section 14.2.1. The decision published on April 26, 1996 clearly states that the ZBA upheld the zoning enforcement officer's cease and desist order issued for violation of Section 14.1.2 for nonconforming use. "The right of appeal, if it is to have any value, must necessarily contemplate that the person who is to exercise the right be given the opportunity of knowing that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue. . . . There can be no doubt that the notice of decision published . . . gave the, plaintiff the opportunity of knowing that there was a decision to appeal from." (Citations omitted; internal quotation marks omitted.) Bridgeport Bowl-O-Rama. Inc. v. Zoning Board,195 Conn. 276, 281, 487 A.2d 559 (1985).
In the present case, there can be no doubt that the notice published on March 29, 1996 gave the plaintiff information that decisions on violations of Sections 7.1.10 and 2.2 had been made from which the plaintiff could appeal. The plaintiff did not commence the appeal until May 9, 1996, some 44 days after the decisions were published. As a result, the Court finds that the appeal of the ZBA's decisions regarding violations of Section 7.1.10 and 2.2 that were published on March 26, 1996 is untimely and the Court does not have jurisdiction to consider them. Id. 283.
Thus, the appeal is dismissed as to the ZBA's decisions regarding violations of Sections 7.1.10 and 2.2. The only decision the Court will consider is the decision regarding violation of Section 14.2.1, the nonconforming use, rendered by the ZBA on April 16, 1996 and published on April 26, 1996.
C. Citation
In administrative appeals, the citation is analogous to the writ used to commence a civil action and directs a proper officer to summon the agency whose decision is being appealed. Sheehan v.Zoning Commission, 173 Conn. 408, 412, 378 A.2d 519 (1977). The Court finds that the citation is proper. (Sheriff's Return.)
D. Bond CT Page 167
Giving a bond with surety or recognizance is an essential element in taking an administrative appeal. Id., 410. The plaintiff has filed a recognizance for the benefit of the ZBA. (Recognizance.) The Court finds that an appropriate bond was filed with this appeal.
SCOPE/STANDARD OF JUDICIAL REVIEW
"It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own. . . . The trial court must uphold the board's decision if it is reasonably supported by the record." (Citations omitted; internal quotation marks omitted.) Connecticut Resources RecoveryAuthority v. Planning Zoning Commission, 225 Conn. 731, 744,626 A.2d 705 (1993).
DISCUSSION
A. Due Process Violations
The plaintiff raises several due process claims in his brief. He alleges that the ZBA closed the public hearing at its February 20, 1996 meeting and then unlawfully accepted evidence at the March 19, 1996 hearing. In the alternative, the plaintiff alleges that if the hearing was not closed on February 20, one member of the ZBA unlawfully prejudged the matter at that hearing and should not have participated at the March hearing. Lastly, the plaintiff argues that the ZBA moved to get an opinion by an attorney and then unlawfully made its decisions without obtaining the opinion.
The record indicates there was a great deal of confusion during the February 20, 1996 public hearing. Several individuals in the audience were talking at the same time while the applicant and several members of the ZBA were trying to establish whether the plaintiff would be able to clean up the property. (ROR, Item # 42, Tr. of 2/20/96 Hearing, pp. 14-16.) In addition, another member of the ZBA was attempting to move to continue the public hearing. While the chairman did ask the audience to stop making comments, the record shows that request was simply to allow the ZBA to continue its dialogue with the applicant and then proceed with a motion for a continuance. (ROR, Item # 42, Tr. of 2/20/96 Hearing, pp. 14-16.) The record is void of any statement declaring the public hearing closed during the February 20 meeting. The plaintiff, as well as others, provided comments at the March 19 CT Page 168 meeting, similar to those expressed at the prior meeting. SeePizzola v. Planning Zoning Commission, 167 Conn. 202, 207,355 A.2d 21 (1974) (due process is served when interested parties are provided with a fair opportunity to cross-examine witnesses, inspect documents and offer evidence in rebuttal). The Court finds that the public hearing was not closed at the February 20 meeting.
The plaintiff claims that if the public hearing was not closed on February 20, the comment by member Donald Ferry at the end of that meeting that "I don't need a month, I know my decision already" when asked if he wanted "a month to think it over" is a violation of the plaintiff's due process rights because Ferry prejudged the matter before evidence was presented at the March meeting. (ROR, Item # 42, Tr. of 2/20/96 Hearing, p. 18.) The Court rejects this claim finding that the plaintiff has failed to establish that Ferry had taken a definite and unalterable position in advance of the public hearing. Furtney v. Zoning Commission,159 Conn. 585, 594, 271 A.2d 319 (1970) (the law does not require that commission members have no opinion concerning the development of their communities). A disinterested observer would not necessarily conclude after reading the record that Ferry had adjudged the facts and the law before hearing the plaintiff's appeal. Clisham v Board of Police Commissioners, 223 Conn. 354,362, 613 A.2d 254 (1992). Ferry had participated in the hearing on February 20 and was ready to make a decision. The plaintiff has not established that the statement indicated anything more than Ferry's belief that the ZBA did not need more time or information to make its decisions.
The plaintiff also claims that since the ZBA moved to obtain an opinion from the attorney, by making its decision without obtaining the opinion, the plaintiff's due process rights were violated. The Court rejects this claim. The ZBA may seek staff assistance, but certainly is not required to obtain it. Laufer v.Conservation Commission, 24 Conn. App. 708, 713, 592 A.2d 392
(1991)
B. Extension or Enlargement of a Nonconforming Use
The plaintiff claims there was not sufficient evidence on the record for the ZBA to conclude the plaintiff was extending or enlarging a nonconforming use. The plaintiff further claims that in making its decision the ZBA failed to attempt to minimize hardship for the plaintiff as required by the ZBA's regulations. CT Page 169
The ZBA did not formally state any reasons for its decision. The Court therefore is required to search the record for reasons supporting the decision that the plaintiff extended or enlarged the nonconforming use. Connecticut Resources Recovery Authority v.Planning Zoning Commission, supra, 225 Conn. 743. A nonconforming use of a property is a permitted use. General Statutes § 8-2, which enables municipalities to enact zoning regulations states in part: "Such regulations shall not provide for the termination of any nonconforming use, building or structure existing at the time of the adoption of such regulations." The town's regulations provide that any nonconforming use shall be permitted to continue, but shall not be enlarged or extended.[3]
"The party claiming the benefit of a nonconforming use bears the burden of proving that the nonconforming use is valid. . . . The legality of an extension of a nonconforming use is essentially a question of fact. . . . It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own. . . . The trial court must uphold the board's decision if it is reasonably supported by the record." (Citations omitted; internal quotation marks omitted.)Connecticut Resources Recovery Authority v. Planning ZoningCommission, supra, 225 Conn. 744. "It is a general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase." (Internal quotation marks omitted.) Id., 740.
"In deciding whether the current activity is within the scope of a nonconforming use consideration should be given to three factors: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." Internal quotation marks omitted.) Bauer v. Waste Management ofConnecticut. Inc., 234 Conn. 221, 236-37, 662 A.2d 1179 (1995). A change in character creates an unlawful expansion of the nonconforming use. In Helicopter Associates. Inc. v Stamford,201 Conn. 700, 715-16, 519 A.2d 49 (1986), the plaintiff was operating a commercial heliport, running approximately ten flights per year, at the time the regulations disallowing heliports were enacted. The plaintiff was entitled to continue the nonconforming use once the regulation was enacted. The plaintiff's increase of flights to more than thirty-six per year, which required a permit from the CT Page 170 state, however, constituted an unlawful change in character. The Court found that the legislature's requirement of a permit created two types of heliports. "The use would be, by legislative decree, a change in the character of the heliport." Id., 717-18. The Court found the plaintiff was only entitled to conduct up to thirty-six flights per year without violating the nonconforming use. Id., 717. Accord Macaluso v. Zoning Board of Appeals,167 Conn. 596, 600, 356 A.2d 885 (1975) (sale of liquor in a package store is of a different character than sale of liquor in a drug store); DeFelice v. Zoning Board of Appeals, 130 Conn. 156, 571,32 A.2d 635 (1940) (the plaintiff could continue with the nonconforming sand removal business, but adding sand processing facilities constituted a departure from the original nature and purpose of the use). Compare DiBlasi v. Zoning Board of Appeals,224 Conn. 823, 831, 624 A.2d 372 (1993), in which the plaintiff's lease of office space to the state's adult probation office was e mere continuation of a utility company's nonconforming use for administrative offices, storage of parts, equipment repairs, payment of utility bills and sale of small appliances. The record shows the plaintiff's predecessor operated a machine repair business on the property before the town adopted zoning regulations. This business included the rebuilding of turret lathes and turret lathe tooling. (ROR, Item # 39.) In 1951, the town adopted zoning regulations and classified the area in which the property is located as an LZ-40 Zone, which does not permit commercial activities. (ZBA's Brief, p. 3; ROR, Item # 42, Tr. of 2/20/96 Hearing, p. 8.) The parties concur that the plaintiff's predecessor operated his business as a nonconforming use once the regulations were enacted. (Amended Complaint, ¶ 3 ROR, Item # 1.)
The plaintiff's business includes servicing and repairing British motor cars, boats, marine engines, all-terrain vehicles and snowmobiles. (Plaintiff's Brief, p. 1; ROR, Item # 42, Tr. of 2/20/96 Hearing, pp. 3-7; Item # 16.) The record shows the plaintiff is storing these vehicles on the property, at least ten cars were on the property at the time of the hearing. (ROR, Item # 42, Tr. of 3/19/96 Hearing, p. 23.) Storing these vehicles on the property has increased the amount of the tract of land in use, thereby extending the nonconforming use in violation of Section 14.2.1 (b). The variety of vehicles and machines restored by the plaintiff can be construed as an increase in the scope of the services offered, thereby enlarging the nonconforming use also in violation of Section 14.2.1 (b). CT Page 171
In giving consideration to the three factors set forth inBauer, supra, 234 Conn. 221, the Court finds evidence in the record that the nature of the original use is not reflected in the plaintiff's use of the property. In addition, there are differences in the character of the uses involved and there is a substantial difference in the effect upon the neighborhood. Id. At 236-37. The plaintiff's predecessor used the property to rebuild turret lathes. That type of business is one carried on inside a building. The plaintiff on the other hand, uses the property to rebuild cars, boats, outboard motors, snowmobiles and all-terrain vehicles. While the plaintiff does rebuild machines, the nature of the plaintiff's machines are quite different from the nature of the lathe machines. The nature of cars, boats and snowmobiles are that of large moving vehicles. To a great extent, the work and the machinery are outside the building. This would not be case with the rebuilding of turret lathes. Secondly, the addition of these vehicles to the property is a significant change to the character of the nonconforming use. There was no evidence that the plaintiff's predecessor's business consisted of anything more than the rebuilding of a narrow line of machines. The plaintiff is involved in several product lines, for which he has a Connecticut Marine Dealer's License and a Snowmobile Dealer's License and a Marine Dealer's Trailer License. (ROR, Item ## 15, 17.) Lastly, the record supports a finding that this business has created a substantial difference in effect upon the neighborhood. Testimony indicates that neighbors have been impacted not only by the unseemly appearance of the property, but also by safety concerns as a result of the large vehicles. (ROR, Item # 42, Tr. of 2/20/96 Hearing, pp. 10-11.)
As a result, the Court finds that the record supports the ZBA's decision that the plaintiff's use of the property is an extension and enlargement of the nonconforming use, constituting a violation of Section 14.2.1 of the regulations. HelicopterAssociates. Inc. v. Stamford, supra, 201 Conn. 716.
The plaintiff claims that member Ferry did not understand the nature of the violation upon which he was acting, and therefore Ferry's vote was arbitrary. The plaintiff argues that with the zoning enforcement officer's order upheld by only two votes, one of which was arbitrary, the record does not support the ZBA's decision. The Court rejects this argument. Individual reasons given by certain members of the board do not amount to a formal, collective, official statement of the commission and are not available to show the reasons for the board's decision. CT Page 172Connecticut Resources Recovery Authority v. Planning ZoningCommission, supra, 225 Conn. 744; Welch v. Zoning Board of Appeals,158 Conn. 208, 214, 257 A.2d 795 (1969). A search of the record for support of the decision upholding the zoning enforcement officer reveals that Ferry did not believe the plaintiff's use was allowed in this zone and in fact such use is not allowed. The evidence supports a finding that the plaintiff's use exceeded the nonconforming use granted to the plaintiff's predecessor and such a use is not otherwise permitted.
The plaintiff argues that the ZBA violated its own regulations by not considering the hardship its decision will have on the plaintiff. The plaintiff cites regulation Section 14.0: "It is also the intent of these Regulations, however, to minimize undue hardship for those whose purchase, ownership, or use of property predated applicable provisions of these regulations." (Plaintiff"s Brief, p. 7.) The Court finds that the plaintiff's use of the property does not predate the enactment of the regulations, and therefore, this Section (14.0) does not apply. Nevertheless, the Court finds that the ZBA did take into consideration the hardship its decision would have on the plaintiff and continued the hearing from February to March in part to allow the plaintiff to make changes in his use of the property. (ROR, Item # 42, Tr. of 2/20/96 Hearing, pp. 19.)
CONCLUSION
For all the reasons stated above, the Court dismisses the appeal.
The dismissal is based on a lack of jurisdiction as to the two decisions made by the ZBA at its March 19, 1996 hearing.
The sign issue was abandoned by the plaintiff.
The dismissal of the April 16, 1996 decision regarding the alleged expansion of the non-conforming use is based upon the Court's findings that the decision is fully supported by the record.
BY THE COURT,
Kaplan, J.