[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter presents the issue of whether the "prior nonconforming use" doctrine applies to permit Robert and Gail Hargrove to operate a temporary residential facility for recovering alcoholics and drug users at 600 Middletown Avenue in North Haven, Connecticut.
This case originally came to the court as an application for injunctive relief brought by the plaintiff Robert F. Burns, Zoning Enforcement Officer for the Town of North Haven. He had determined that the Hargroves ("the defendants") were not complying with the zoning regulations of the Town of North Haven because the facility they were operating is not a permitted use in the R-40 zone in which it lies. On May 19, 1999, he served upon them a Cease and Desist Order. CT Page 3221
The defendants appealed the determination of the Zoning Enforcement Officer to the North Haven Zoning Board of Appeals ("ZBA") which conducted a properly noticed public hearing on July 19, 1999. After all interested parties, including the defendants, were fully heard, the ZBA voted to uphold the Cease and Desist Order. The Board determined that the use to which the defendants were putting their property was not permitted in an R-40 residential zone: that they were prohibited from operating a business and from letting rooms or furnishing board to more than four persons.
Before the Superior Court are now the Application for Temporary Injunction, filed by the plaintiff to enforce the Cease and Desist Order, and the appeal from the action of the Zoning Board filed by the defendants. The court consolidated the matters after the Town agreed to forbear enforcement efforts pending the outcome of this litigation in the Superior Court.
AGGRIEVEMENT
The court heard evidence from the defendant Robert Hargrove, one of the owners of 600 Middletown Avenue, a party clearly aggrieved by the decision of the North Haven ZBA. It is not contested that the defendants have proved that they are aggrieved within the meaning of Conn. Gen. Stat. § 8-8.
THE STANDARD OF REVIEW
The Superior Court has authority to overrule a decision of a zoning authority only if it is found that the authority has not acted fairly, with proper motives, and upon valid reasons.McMahon v. Board of Zoning Appeals, 140 Conn. 433, 438 (1953). It is not the function of the court to substitute its judgment for that of the local zoning board. Whittaker v. Zoning Board ofAppeals, 179 Conn. 650 (1980). Rather the question is whether the action taken by the zoning board was reasonably supported by the record before it. Housatonic Terminal Corp. v. Planning andZoning Board, 168 Conn. 304 (1975).
The court is empowered to receive and review the contents of the record and to hear any additional evidence that may be necessary for the equitable disposition of the appeal. Conn. Gen. Stat. § 8-8 (k). The parties have presented such additional evidence here. Because the court's disposition of the appeal also disposes of the issues raised in the Application for Temporary CT Page 3222 Injunction, the court does not separately review the grounds necessary for granting equitable relief.
THE HISTORY OF THE PROPERTY
Based upon the record and the additional evidence submitted to the court, the court finds the following facts.
The property at 600 Middletown Avenue consists of a one-story building with small single rooms that align a long corridor. Long before the enactment of the North Haven Zoning Regulations in 1971, the real property had once been home to a boarding house or tourist home. In 1958, the current masonry structure was built, with the approval of the North Haven Planning and Zoning Commission, and the former owner began the operation on the property of a convalescent home for elderly disabled adults. In 1976, the Shirley Frank Foundation leased the property for use as a licensed and approved alcohol detoxification facility. At a meeting of the Planning and Zoning Commission on March 22, 1976, the use was represented to be for the short-term medical and nursing treatment of up to twenty persons during rehabilitation for alcoholism. It does not appear that the Board ever took any action to specifically permit or prohibit this use. However, the Shirley Frank Foundation closed at the site within three years.
Thereafter, it came to the attention of the Zoning Enforcement Officer that Marge Locke, who was then the owner, was advertising the operation of a boarding house of some type for disabled people at the property. On February 19, 1980, the Town served a Notice of Violation and Order to Discontinue on Ms. Locke, notifying her of the then-existing zoning regulations that prohibited property in an R-40 district from being used as a privately operated convalescent home or home for the aged, without the specific approval of the ZBA. Ms. Locke filed an appeal of the Zoning Enforcement Officer's determination, and the Board heard the matter on April 10, 1980.
At the hearing, the appellant presented her case for the continued nonconforming use of the facility as a home for dependent adults with physical disabilities. The residents were all said to require some degree of supervision although no on-site medical care was required. The home was staffed by three full time day employees and two full time night attendants as well as a cook. Counsel for the appellant drew a careful distinction between a boarding house and the type of convalescent CT Page 3223 home being operated by his client Ms. Locke. A boarding house, he argued, is simply a place where someone lives, where there is no staff, and where no additional care is provided. Record, ZBA Public Hearing April 10, 1980, p. 287. The Board obviously agreed. Later that evening, it voted unanimously to find that the operation of the facility as a home for dependent adults with physical disabilities was a continuation of the prior nonconforming use.
For some period of time after the 1980 decision of the ZBA, the owner evidently operated the facility, known as Shepherd I, in conformance with the ruling. By 1982, however, it appears that the facility was no longer accepting only physically disabled adults as residents. The facility no longer had on-site staff and no longer offered any form of care to the residents. At least by 1983, anyone who could pay was accepted as a tenant.[1] From 1982 or 1983 through 1999 when the Hargroves bought the property, the property was used as a rooming house, usually with four or fewer tenants at a time.[2]
THE CURRENT USE
The current defendants, Robert and Gail Hargrove, purchased the property in March 1999. It was and is their intention to use the property as a rooming house dedicated to the continued recovery of persons whose lives have been ravaged by drugs or alcohol. Because the danger of relapse is great when returning to one's old environment after detoxification, the goal of the defendants is to create a therapeutic living space that is drug and alcohol free. One's roommates and neighbors would be like-minded individuals who can provide mutual support to keep the community and its residents clean and sober. Once a resident has gained confidence and has had the experience of living responsibly for a number of months, the defendants foresee the resident leaving the facility and moving on to a more traditional living arrangement. There is no question that their intentions are honorable and that their approach to alcohol recovery is helpful.
THE LEGAL ISSUE
Conn. Gen. Stat. § 8-2 provide as follows:
 [Municipal zoning] regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations. Such CT Page 3224 regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use.
The issue for the court is two-fold: first, whether the nonconforming use to which the defendants have put the property is a one that is substantially the same as that for which the property was previously used before the enactment of the restrictions in the zoning regulations; and second, whether even if so, the use is one that had been abandoned by prior users of the property such that the prior nonconforming use has not been continuous to the present time. The court finds that the current use is neither substantially the same nor continuous.
It was within the province of the Zoning Board to have determined in 1980 that a nonconforming use was in existence at the property, see Point O'Woods Association. Inc. v. Zoning Boardof Appeals, 178 Conn. 364, 368-69 (1979), and to identify and define the nonconforming use. See Helbig v. Zoning Commission,185 Conn. 294, 306 (1981). The type of physically disabled adult for which all prior nonconforming uses had allowed was one who needed actual supervision and care because of a chronic or acute disabling condition. In the Shirley Frank Foundation years, the residents were undergoing detoxification and its immediate physical aftereffects, and they needed physicians and nurses to attend to them during their stay as inpatients. By the time of the 1980 ZBA ruling, the residents were elderly (at least one of them was blind) and they needed staff members to assist and look after them.
The current residents, while perhaps psychologically fragile, have no such disabilities. They have no more extraordinary physical health problems or health needs than the general population, and no specialized staff is in place to deal with them.[3] The property is now operated as an ordinary rooming house accommodating more than four people. That the selection of residents is designed to attract individuals in recovery does not distinguish its use from that of a rooming house catering to those who are, for example, trying to quit smoking or who are contemplative, and who wish there to be rules against smoking or rules to enforce silence.
The defendants urge the court to apply the analysis of the Supreme Court in DiBlasi v. Zoning Board of Appeals of Town ofCT Page 3225Litchfield, 224 Conn. 823 (1993), to the instant case. In DiBlasi, the issue was whether the change from the prior nonconforming use as an office for a utility company and then a plumbing supply company was different in character from the use as an office for the Department of Adult Probation. The decision was that there was no substantial difference for land use purposes of an office used for a utility company or a plumbing supply business and one used to keep track of adult probation clients. Objections focusing on the intensity of the use or the change in lessee are not germane to the character of the use itself. Zachs v. Zoning Board of Appeals, 218 Conn. 324, 331
(1991).
In deciding whether the current activity is within the scope of a nonconforming use, the case of Zachs v. ZBA, supra, teaches that three factors are to be considered: "(1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." Id., 332. The court having considered all of these criteria determines that the use to which the defendants have put the property is not a continuation of the 1980 nonconforming use.
The nature of a place where people reside is highly variable. People may spend nights and take meals in a one family home, a hotel, a hospital, but the character of each of these types of "dwelling" is sufficiently different to commonly permit different types of zoning regulation for each of them. An office is an office (as in DeBlasi, supra); but under the facts established in this case, a convalescent home or dwelling for disabled adults has a sufficiently different character from that of a rooming house that the two cannot be said to be the same. The Zoning Board did not abuse its authority in so finding.
More compelling, however, is the evidence that the use of the property for disabled adults was abandoned years before the current owners began to operate their residential facility. The use of the property within the confines of the ZBA's stated prior nonconformity had fully ceased by 1983. The property was operated as an ordinary rooming house designed for more than four people at a time, and one statement attributed to the former owner Patricia Christoforo suggests that as many as sixteen roomers at a time resided there between 1983 and 1999 (Exhibit A: Town of CT Page 3226 North Haven Zoning Complaint/Inquiry). Any intention to employ on-site professional staff or to provide care or services for residents had been long-since discarded by the time the defendants purchased the property in 1999.
"The temporary interruption or suspension of a nonconforming use without substitution of a conforming one or such a definite and substantial departure from previously existing conditions and uses as to signify an abandonment of the latter, does not terminate the right to resume them." Point O'Woods Association,Inc. v. Zoning Board of Appeals, 178 Conn. 364, 369 (1979).[4]
Here the Zoning Board was justified in finding that the substituted use as an ordinary rooming house created such a substantial departure from the previously existing use as to signify abandonment. The prior use had been discontinued and totally supplanted by a different one. Whether the owners of the property hoped in the future to revive the prior approved
nonconforming use is irrelevant in a case where they actually began using the property for another purpose in the interim. The intent of an owner to continue or to abandon a use can be "evidenced by overt acts or failure to act sufficient to constitute proof of that intent." Dubitzky v. Liquor ControlCommission, 160 Conn. 120, 125 (1970).
"It is the general principle in zoning that nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit." Point O'WoodsAssociation, Inc. v. Zoning Board of Appeals, supra, 369; see also Helbig v. Zoning Commission, supra, 306. Indeed it would be unusual for zoning regulations to allow a change from one nonconforming use to another nonconforming use, without obtaining a variance; and the regulations do not so allow here. Cf., PointO'Woods Association, Inc. v. Zoning Board of Appeals, supra, 369-370. The decision of the previous owners to abandon the use of the property as a convalescent home and substitute the use as a rooming house for able-bodied lessees has extinguished their right to use the property as it was formerly.
The defendants raise for the first time before the Superior Court the issue of whether the action of the ZBA contravenes the requirements of 42 U.S.C. § 3604, the section of the Fair Housing Act that requires a municipality to make reasonable accommodation in its rules and policies when necessary to afford persons with disabilities the equal opportunity to use and enjoy a dwelling. Curiously the whole problem with the case is that the CT Page 3227 municipality did accommodate the residential needs of disabled adults through its 1980 determination that despite the zoning regulations the owners of 600 Middletown Avenue could operate the facility as a convalescent home. The owners chose to convert the property to a different use, one that was in compliance neither with the permitted use nor the zoning regulations.
The defendants have failed to show that the action of the North Haven ZBA contravenes the cited amendments to the Fair Housing Act, or even that the act applies in this set of circumstances.
The attempt by the current defendants to create a therapeutic community where substance abusers can continue their recovery free from the temptations of their former environment is laudable. Such commendable intentions cannot supplant the proper requirements of land use law, however. The use of the property at 600 Middletown Avenue as currently constituted is not permitted in the R-40 zone in which the property is situated. Accordingly, the decision of the North Haven ZBA is affirmed, and the appeal of Robert and Gail Hargrove is dismissed. The application of the plaintiff Robert F. Burns, Zoning Enforcement Officer of the Town of North Haven, to enjoin the defendants from operating 600 Middletown Avenue, North Haven, as a business furnishing rooms to let is granted and such use is hereby enjoined.
Patty Jenkins Pittman, Judge